IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| KEVIN RASHAAN GOLDEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:20-CV-00620-JDL |
| | § | |
| CITY OF LONGVIEW, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant the City of Longview's Motion for Summary Judgment (Doc. No. 97.) Plaintiff Kevin Rashaan Golden has filed a response (Doc. No. 103)[1], to which Defendant has filed a reply (Doc. No. 104.) Plaintiff subsequently filed a sur-reply. (Doc. No. 106.)[2] Upon consideration of the parties' arguments and the evidence presented, Defendant's Motion (Doc. No. 97) is **GRANTED.**

**BACKGROUND**

Plaintiff initiated this action on November 27, 2020. (Doc. No. 1.) On August 4, 2021, the court granted Defendants' motion to dismiss all of Plaintiff's claims except for Plaintiff's Americans with Disabilities Act ("ADA") claims against Defendant the City of Longview. (Doc. No. 41.) Defendant now seeks summary judgment on the discrimination and retaliation ADA claims. (Doc. No. 97.)

---

[1] Plaintiff titled Doc. No. 103 "Plaintiff's motion for summary judgment to oppose Defendant's summary judgment;" however, the court interprets Doc. No. 103 as a response.
[2] The court has considered Plaintiff's sur-reply (Doc. No. 106); however, the court did not consider Plaintiff's attachment to the sur-reply (Doc. No. 106-1), as the court granted Defendant's motion to strike the attachment to the sur-reply. (Doc. No. 111.)

1

Plaintiff claims that he suffers from Attention-Deficit Hyperactive Disorder (ADHD) and that Defendant discriminated against him because of his disability, failed to provide reasonable accommodations, and retaliated against Plaintiff for requesting such accommodations. (Doc. No. 103, at 14–33.) Plaintiff was previously employed by Defendant, on a probationary basis, as a Signs and Markings Technician. (Doc. No. 97-3, at 1–2.) Shortly after Plaintiff was hired, he informed his supervisor, Keith Covington, that he would need additional assistance because of his ADHD. (Doc. No. 103 at 6; Doc. No. 97-3, at 1.) Plaintiff states that he requested extra time, extra training, and attention. (Doc. No. 103, at 6.) Mr. Covington states that he and his team provided Plaintiff with additional instruction, additional supervision, and additional time to perform tasks. (Doc. No. 97-3.) However, Plaintiff disputes that he was provided these accommodations. (Doc. No. 103.) Over the course of his employment, there were several evaluations that documented that Plaintiff was not meeting performance expectations. (Doc. No. 97-3, at 1–2, 5–18.) Mr. Golden received several warnings regarding his performance. *Id.* at 18.

On September 12, 2018, there was an alleged incident between Plaintiff and employees Richard Comer and Steve Fleming. (Doc. No. 97-4, at 1.) According to Mr. Fleming, Plaintiff assumed that Fleming and Comer had locked Plaintiff out of a garage and Plaintiff began screaming and cussing at Mr. Comer over the phone, which Mr. Comer had placed on speaker. *Id.* Mr. Fleming states that he reported this incident to Mr. Covington the next morning. *Id.* Mr. Covington states that once he learned of Plaintiff's alleged abusive behavior, he reported it to Mr. Ha, the Manager of the Traffic Division. (Doc. No. 97-3, at 2.) On September 14, 2018, Mr. Ha sent Plaintiff a pre-termination letter, informing Plaintiff that he was recommending that Plaintiff be terminated due to Plaintiff's poor job performance and "his discourteous attitude towards a fellow employee." (Doc. No. 97-5, at 2.) On September 19, 2018, Director of Public Works, Rolin

McPhee, sent Mr. Golden a letter informing him that he had been terminated. (Doc. No. 97-5, at 3.)

## LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the

pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## DISCUSSION

Plaintiff's amended complaint is difficult to understand; however, the court reads the complaint to assert a discrimination claim, a retaliation claim, a failure to accommodate claim, and a failure to engage in the interactive process of seeking an accommodation claim under the ADA. (Doc. No. 30.) Defendant has moved for summary judgment on the discrimination and retaliation claims. (Doc. No. 97.)

### a. Discrimination Claim

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir. 2014). Under the *McDonnell Douglas* approach, a plaintiff must demonstrate a *prima facie* case of discrimination. *Id.* To establish a *prima facie* case under the ADA, Plaintiff must show that (1) he is an individual with a disability within the meaning of the ADA; (2) he was qualified for his job; and (3) "an adverse employment decision was made solely because of [his] disability." *Owens v. Trane Co.*, 145 F.3d 360, 1 (5th Cir. 1998) (citing *Rizzo v. Children's World Learning Ctrs., Inc*., 84 F.2d 758, 763 (5th Cir. 1996)). If the plaintiff succeeds in establishing his *prima facie* case, then the defendant must articulate a legitimate, nondiscriminatory reason for the termination. *E.E.O.C.,* 773 F.3d at 694. Finally, the burden shifts back to the plaintiff to show that defendant's proffered reason is pretextual. *See Id.* In the summary judgment context, a case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000)).

Defendant argues that Plaintiff is not disabled within the meaning of the ADA and that he was not qualified for the job, thus failing to make a *prima facie* case. (Doc. No. 97, at 16–21.) Further, Defendant argues that even if Plaintiff can make a *prima facie* showing, Defendant has stated a legitimate non-discriminatory reason for the termination, and Plaintiff does not meet his burden of proving that the stated reason was pretextual. *Id*. at 21–23. Plaintiff responds that he

5

does have a disability within the meaning of the ADA, that he was qualified for the job, and that Defendant's reasons for termination are pretextual. (Doc. No. 103.) Defendant's reply brief (Doc. No. 104) reiterates the same point made in the motion. Similarly, Plaintiff reiterates his points in the sur-reply. (Doc. No. 106.)

i) <u>Direct Evidence</u>

Defendant's motion is based upon the *McDonnell Douglas* approach and does not address the issue of direct discrimination. However, in Plaintiff's response, Plaintiff states that Covington's evaluation notes provide direct evidence of discrimination. (Doc. No. 103, at 19.) Plaintiff points to the entry on August 13, 2018, which states that Covington has to "teach him as though he had the mind of a young child." (Doc. No. 103, at 19; Doc. No. 103-2, at 9.) Plaintiff also points to Covington's notes that "he never thinks for himself," and "[w]e not only have to train him about signs, we also, like a child, make him understand." (Doc. No. 103, at 19; Doc. No. 103-2, at 10, 13.) Defendant does not address this argument in its reply.

The court does not find that these statements are sufficient to constitute direct evidence of discrimination. "If an inference is required for evidence to be probative as to an employer's discriminatory animus, the evidence is circumstantial, not direct." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019). Here, the comments that Plaintiff has the mind of a child and does not think for himself could just be statements showing that Covington was unsatisfied with Plaintiff's performance and thought he was not performing the job successfully. In order to find evidence of animus, an inference would have to be drawn that Covington thought Plaintiff was performing poorly due to his ADHD and that Plaintiff was terminated for this reason. *See id.* (stating that comments by managers regarding an employee who was diagnosed with Parkinson's disease that he "was never coming back to work" and "people with Parkinson's don't get better" were not

sufficient to show direct discrimination because the inference had to be drawn that Plaintiff was not coming back to work due to the irreversible nature of his disability).

Thus, since the court finds that Plaintiff has not shown direct evidence of discrimination, the court turns to the *McDonnell Douglas* approach.

      ii)      <u>*McDonnell Douglas* Framework</u>

Defendant argues that Plaintiff is not disabled within the meaning of the ADA for two reasons: (1) Plaintiff has been successful at a multitude of jobs in the past and it was only this particular job that he could not perform, even with reasonable accommodations; and (2) Plaintiff's ADHD does not substantially limit a major life activity. (Doc. No. 97, at 18.) As to the first point, Defendant interprets Plaintiff's complaint as alleging that Plaintiff's major life activity that was impacted by his ADHD is that he was unable to perform his duties as a Signs and Markings Technician. (Doc. No. 97, at 16.) Defendant argues that when the major life activity under consideration is working, Plaintiff must show that he is unable to work in a broad class of jobs, not just a particular job. *Id*. Thus, Defendant argues that Plaintiff is not disabled because the evidence of record shows that Plaintiff held various jobs over the years and stated that he has been able to perform all of the jobs successfully. *Id*. at 18. As to the second point, Defendant argues that the evidence shows that Plaintiff's other major life activities are not substantially limited by his ADHD, and thus Plaintiff is not disabled within the meaning of the ADA. *Id*.

Plaintiff responds that he has ADHD and points to a psychiatric evaluation that shows that he has a low average Contextual Verbal Learning, he has a low average Auditory Working Memory, is moderately impaired at Selective Visual Attention, and has a low average for Abstract Reasoning and Logical Analysis. (Doc. No. 103, at 15.) Thus, Plaintiff concludes that "[l]earning, reading, concentrating, and thinking are all major life activities" and he has shown he is disabled.

7

*Id*. In his sur-reply, Plaintiff clarifies that he is claiming that he is disabled because his major life activities of learning, reading, and concentrating are substantially limited by his ADHD; Plaintiff states that he is not claiming that his ADHD prevents him from working. (Doc. No. 106, at 2.)

"As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." *Waldrip v. General Electric Co*., 325 F.3d 652, 654 (5th Cir. 2003). "The ADA defines 'disability' to include: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist*., 871 F. Supp. 2d 581, 605 (S.D. Tex. 2012).

Here, Plaintiff claims that his ADHD substantially limits his major life activities of learning, reading, concentrating, and thinking and that the psychiatric evaluation of Dr. Levi Armstrong documents the impairment. (Doc. No. 103, at 15.)

A.) <u>Substantial Limitation of a Major Life Activity</u>

"To determine whether an individual is substantially limited in a major life activity other than working, the court looks to whether that person can perform the normal activities of daily living." *Sherrod v. Am. Airlines, Inc*., 132 F.3d 1112, 1120 (5th Cir. 1998). "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Bennett v. Calabrian Chemicals Corp*., 324 F. Supp. 2d 815, 826 (E.D. Tex. 2004). "The statutory language, requiring a substantial limitation of a major life activity, emphasizes that the impairment must be a significant one." *Id*.

Plaintiff merely states that his ADHD substantially limits his major life activities of learning, reading, concentrating, and thinking. (Doc. No. 103, at 15.) Plaintiff references the

psychiatric report of Dr. Armstrong, that he claims proves that he is substantially limited. *Id*. However, as discussed at length below, the report does not demonstrate substantial limitation.

Plaintiff also attaches a sworn affidavit, in which he states that while he worked at E-tech services, he would get distracted by other employees and had difficulty typing 35–40 words per minute. (Doc. No. 103-3, at 4.) Plaintiff states that his supervisor allowed him to work the night shift and gave him a cubicle far away from other employees. *Id.* Plaintiff also states that when he worked at Tyson foods he worked in a cold environment, lifting heavy products, and was on his feet hours at a time. *Id.* Plaintiff states that because of this he would get very hyper sometimes due to being tired. *Id.* at 4–5. Plaintiff states that after several hours of work he would occasionally ask to go to the restroom; he states that management allowed him to take an additional small break to eat a snack to get re-energized. *Id.* at 5. Plaintiff also describes another occasion at Tyson foods where he was too slow at separating meat product and because of this was switched to a position where he could rotate between jobs. *Id.*

Besides the report and Plaintiff's affidavit, Plaintiff does not point to any specific evidence in the record as to how his ADHD substantially limits a major life activity. Defendant asserts that Plaintiff's testimony demonstrates that Plaintiff's normal life activities are not substantially limited by his ADHD. (Doc. No. 97, at 4.) Plaintiff testified that he pays his own bills, manages his money, drives, cooks, cleans, does his grocery shopping, takes care of himself, and reads "constructive" books such as books about history, astronomy, astrology, science, and religion. (Doc. No. 97-1, at 12–14.) Plaintiff also testified that he graduated from high school without taking any special education courses. *Id.* at 8. Further, Plaintiff testified to holding a multitude of jobs throughout his life and stated that he was able to perform them all well. *Id.* at 17–38.

The court finds that Plaintiff has failed to show that he is substantially limited in a major life activity because Plaintiff has not pointed to any evidence in the record to support his allegation. Plaintiff's affidavit does not demonstrate that Plaintiff is substantially limited in a major life activity. Plaintiff merely states that he would get distracted by co-workers, was unable to type 35–40 words per minute, would get tired after hours of heavy lifting and have to use the restroom, and was unable to keep up the pace of separating meat product. (Doc. No. 103-3, at 4–5.) The events described by Plaintiff are not sufficient show that Plaintiff is substantially limited in a major life activity because the events described do not demonstrate a significant impairment when compared to the average person. *See DeMar v. Car-Freshner Corp.*, 49 F. Supp. 2d 84, 91 (N.D.N.Y. 1999) (quoting 29 C.F.R. § 1630.2(j) (stating that "[a]n individual is not substantially limited in a major life activity if the limitation ... does not amount to a significant restriction when compared with the abilities of the average person.")); *see also Calef v. Gillette Co.*, 322 F.3d 75, 86 (1st Cir. 2003) (finding that a plaintiff who stated that his "ADHD makes it more difficult for him to respond to stressful situations, that when he becomes angry, he sometimes loses control and can neither speak nor think well" was not sufficient to show a substantial limitation on a major life activity). Rather, these events may demonstrate employment difficulties Plaintiff faced but these events, either singly or as a group, fail to show a substantial limitation of a major life activity.

Further, the evidence of record indicates that Plaintiff is not substantially limited because he testified that he is able to perform daily life activities, graduated from high school with no accommodations, and performed a multitude of jobs successfully. *See Vertrees v. Baylor All Saints Med. Ctr.*, No. 4:06-CV-177-Y, 2007 WL 9718183, at *6 (N.D. Tex. Nov. 7, 2007) (finding that Plaintiff who was able to read, write, graduate from high school and college, and maintain employment was not disabled within the definition of the ADA merely because it took Plaintiff

10

longer to learn the skills required to be an anesthesia technician); *Calef*, 322 F.3d at 86 (stating that "[m]erely pointing to a diagnosis of ADHD is inadequate" to show that a plaintiff is substantially limited in a major life activity and plaintiff's assertion that his ADHD makes it more difficult to respond to stressful situations does not constitute a substantial limitation).

    B.) Record of Impairment

"[I]n order to make out a claim for discrimination based on a record of impairment, the plaintiff must show that at some point in the past, [he] was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity." *Sherrod,* 132 F.3d at 1120–21. "It is not enough for an ADA plaintiff simply to show that he has a record of an adverse medical diagnosis; in order to establish the existence of a disability under § 12102(2)(B) there must be a record of an impairment that substantially limits one or more of the ADA plaintiff's major life activities." *Bennett*, 324 F. Supp. 2d at 832 (internal quotations omitted).

  Plaintiff claims that the Psychiatric Evaluation by Dr. Levi Armstrong demonstrates that his ADHD substantially limits his major life activities of learning, reading, concentrating, and thinking (Doc. No. 103, at 15.) However, the court finds that Plaintiff has not produced evidence that establishes a record of impairment. The psychiatric report that Plaintiff points to does not establish that Plaintiff's ADHD substantially limits a major life activity; at most, the report shows that Plaintiff has symptoms "consistent with longstanding ADHD," that have a mild to moderate impact on certain aspects of his life. (*See* Doc. 103-2, at 38–44.) Plaintiff references four categories: a low average Contextual Verbal Learning, he has a low average Auditory Working Memory, is moderately impaired at Selective Visual Attention, and has a low average for Abstract Reasoning and Logical Analysis. (Doc. No. 103, at 15.) As noted above, the record referenced by Plaintiff does not establish that Plaintiff is substantially limited in a major life activity. Instead, the

record addresses Plaintiff's cognitive functioning and merely shows that Plaintiff is in the low average in three out of the four categories he discusses and is moderately impaired in the fourth. In addition, the general nature of Dr. Armstrong's report shows that Plaintiff is within the average range (either low average, average, or high average) for most of the cognitive functions. (Doc. No. 103-2, at 43–44.) In fact, Plaintiff was found either mildly or moderately impaired in only three out of thirty-one categories. *Id.* Dr. Armstrong found that Plaintiff's intelligence is within the average range, and that the "neuropsychological test results reflect evidence of mildly impaired working memory/selective visual attention and subtle weakness of his executive functioning." *Id.* at 38. Accordingly, the court does not find that the report is sufficient to demonstrate a record of impairment.

For these reasons, Plaintiff has failed to raise a triable issue of fact demonstrating that he is an individual with a disability within the meaning of the ADA and summary judgment is therefore appropriate. Because this initial requisite element of Plaintiff's *prima facie* case fails, the court will not consider the remaining elements of his *prima facie* case. Thus, the court finds that Defendant's motion for summary judgment on the discrimination claim should be granted.

### b. Retaliation Claim

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) the employer took an adverse action against him; and (3) there was a causal connection between the adverse action and the protected activity. *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation,

which the employee accomplishes by showing that the adverse action would not have occurred but for the employer's retaliatory motive." *Id.* at 454 (internal citations omitted).

  i)  <u>No Causal Connection</u>

  Defendant argues that Plaintiff has failed to show a causal connection between the protected activity and the adverse employment action. (Doc. No. 97, at 25.) Defendant states that it reads Plaintiff's complaint to state that the protected activity was Plaintiff's request for reasonable accommodations. *Id*. Defendant argues that since Plaintiff requested the accommodations on July 31, 2018, and Plaintiff was terminated on September 19, 2018, after documented poor job performance and documented disrespectful and abusive behavior, Plaintiff cannot show that "but for" the request for accommodations, Plaintiff would not have been terminated. *Id*. at 25–26. Plaintiff argues that he can show a causal connection because he was hired on July 5, 2018, informed Mr. Covington of his ADHD and requested reasonable accommodations on July 31, 2018, and only after this request for accommodations did Covington start documenting Plaintiff's poor job performance. (Doc. No. 103, at 22.) Further, Plaintiff argues that after he received the pre-termination letter from Mr. Ha, he complained to Robyn Edwards that Covington was discriminating against Plaintiff and then Plaintiff was terminated. *Id*. at 22–25.

  Regarding Plaintiff's argument that the request for accommodations was the reason for his termination, the court finds that Plaintiff has failed to establish a causal link. Plaintiff complains that Covington started documenting Plaintiff's poor performance after Plaintiff requested reasonable accommodations. (Doc. No. 103, at 22.) However, Plaintiff must show that but for the protected activity, he would not have been terminated. The protected activity here is the request for accommodations made on July 31, 2018, and the adverse action is Plaintiff's termination on

13

September 19, 2018. Plaintiff seems to be claiming that there is a temporal connection that demonstrates the causal link between requesting accommodations and being terminated. However, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine issue of fact on retaliation." *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 973 (8th Cir. 2014). Further, the evidence of record indicates that the determinative event that resulted in Plaintiff's termination was Plaintiff's aggressive outburst towards his co-workers. According to Covington's notes, Plaintiff had been performing poorly for almost two months. (Doc. No. 97-3, at 5–14.) However, Covington's recommendation to Mr. Ha that Plaintiff be terminated occurred almost immediately after Plaintiff's outburst, which allegedly occurred on September 12, 2018. (Doc. No. 97-3, at 2.) On September 14, 2018, only two days after the alleged outburst, Mr. Ha recommended to his director that Plaintiff be terminated and Mr. Ha sent Plaintiff the pre-termination letter. (Doc. No. 97-5, at 2.) Director McPhee subsequently terminated Plaintiff on September 19, 2018, stating that the reason for termination was Plaintiff's poor performance and the aggressive outburst. *Id.* at 3. Plaintiff states in his sur-reply that he "made clear to Covington that he did not commit the verbal assault against Richard Comer." (Doc. No. 106, at 4.) During Plaintiff's deposition, he stated that he did not use profanity and was not disrespectful; however, Plaintiff stated that he was direct, and "came at them in a way to make them feel like y'all wasn't trying to be team members … I'm quite sure they didn't like that language…" (Doc. No. 97-1, at 49.) Thus, regardless of whether Plaintiff actually had an aggressive outburst, the evidence indicates that this incident was determinative in Covington's decision to recommend that Plaintiff be terminated, and in Mr. Ha and Director McPhee's decision to terminate Plaintiff. Thus, Plaintiff fails to establish the causal link that he was terminated because of his request for accommodations. *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th

14

Cir. 1999) (finding that an employee failed to show a causal connection when he informed his supervisor that he had filed a discrimination complaint and was then terminated moments later, because there was sufficient evidence to show that the employee had been terminated for insubordination when he yelled at his supervisor on the phone).

To the extent that Plaintiff claims that he can show a causal connection because he informed Robyn Edwards that he wanted to file a discrimination complaint against Covington one day before the final termination letter came down, the court finds that Plaintiff cannot establish a causal connection. Mr. Ha's pre-termination letter had already recommended to Director McPhee that Plaintiff be terminated several days before the final termination letter was issued. (Doc. No. 97-5, at 2–3.) Thus, Plaintiff has not shown a causal link between his request for an investigation and the official letter that terminated him. It is clear from the evidence that the decision to terminate Plaintiff had already been set in motion before Plaintiff ever requested the discrimination investigation.

For these reasons, Plaintiff has failed to raise a triable issue of fact as to the requisite causal connection element of his *prima facie* case and summary judgment is therefore appropriate. Thus, the court finds that Defendant's motion for summary judgment on the retaliation claim should be granted.

    **c. Failure to Accommodate Claim**

Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). To prevail on a claim for failure to accommodate under the ADA, Plaintiff must show that: (1) he is a "qualified individual with a disability;" (2) the disability and

its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Feist*, 730 F.3d at 452.

Defendants do not move on the failure to accommodate claim. However, the court reviews the claim under its screening authority pursuant to 28 U.S.C. § 1915(e)(2). 28 U.S.C. § 1915(e)(2) provides that:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

In order to state a plausible claim for relief, a pleading must contain (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." Fed.R.Civ.P. 8. Moreover, to withstand scrutiny for pleading in federal court, allegations must meet the requirements of *Iqbal* and *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S 544, 545 (2007) (interpreting Rule 8); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684–85 (2009) (applying *Twombly* generally to civil actions pleaded under Rule 8). Allegations that are implausible and unsupported by facts or evidence are insufficient to state a claim. *Id*.

In his amended complaint, Plaintiff merely alleges that he has ADHD, which causes him to get distracted easily, interrupting his ability to think, learn and concentrate on what he is being trained to do. (Doc. No. 30, at 49.) Plaintiff alleges that he requested reasonable accommodations from his supervisor, Covington, and Covington agreed to be patient with Plaintiff. *Id*. at 49–50.

Plaintiff also states that he sometimes gets frustrated and requested that Covington appoint him an appropriate employee to train Plaintiff. *Id*. at 57.

The court finds that Plaintiff has failed to state a claim for failure to accommodate because Plaintiff has failed to allege sufficient facts to infer that he is disabled under the ADA. "The ADA defines 'disability' to include: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." *Brown*, 871 F. Supp. 2d at 605. "[A]n impairment must substantially limit a major life activity before it may be deemed a disability for purposes of the ADA." *Davidson v. Midelfort Clinic, Ltd*., 133 F.3d 499, 506 (7th Cir. 1998).

Plaintiff states that he has ADHD and that it affects his ability to concentrate and learn due to Plaintiff being easily distracted. (Doc. No. 30, at 49.) Plaintiff has not stated the severity of his ADHD, and has failed to state sufficient facts to show that his ADHD substantially limits one or more of his major life activities. *See Brown*, 871 F. Supp. 2d at 605 (finding that the statement that "Plaintiff suffers from and was diagnosed with [ADHD] which adversely affects her ability to remember [short] term and to concentrate on one task at a time" failed to state a claim because it did not provide sufficient facts for the court to conclude that Plaintiff's ADHD substantially affected a major life activity.)

Further, because Plaintiff has already had the opportunity to amend as well as to complete discovery on these claims, the court finds that any further amendment would be futile. As discussed above in section (a)(ii)(1), there is no evidence in the record that Plaintiff points to that creates a genuine dispute of material fact that Plaintiff's ADHD substantially limits one or more of his major life activities. Thus, the court finds that Plaintiff's failure to accommodate claim should be dismissed, with prejudice, for failure to state a claim upon which relief may be granted.

### d. Failure to Engage in the Interactive Process Claim

Plaintiff also asserts that Defendant failed to engage in the interactive process of giving Plaintiff a reasonable accommodation. (Doc. No. 30, at 36–43.) Defendant does not address this argument independently. However, several Circuits have held that the failure to engage in the interactive process is not an independent claim. *See Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) (stating that "a failure to engage in a good faith interactive process is not an independent violation of the ADA"); *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (finding that "[i]n this circuit, failure to engage in the interactive process does not give rise to an independent claim. Instead, it is a violation of the ADA only if the plaintiff establishes a *prima facie* case of failure to accommodate.") (internal citations omitted); *Murphy v. Sec'y, U.S. Dep't of Army*, 769 F. App'x 779, 782 (11th Cir. 2019) (stating that "[t]here is no independent cause of action for bad faith interactive process.")

Thus, the court finds that to the extent Plaintiff intended to plead a separate claim for failure to engage in the interactive process, this does not create a standalone claim and should be dismissed, with prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2). Moreover, given Plaintiff's allegations, the court considers such a claim to be subsumed in Plaintiff's failure to accommodate claim, which was already considered above, and fails for the reasons set forth herein.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (Doc. No. 97) is **GRANTED** as to Plaintiff's discrimination and retaliation claims and those claims are **DISMISSED** with prejudice. Further, the court finds that Plaintiff's failure to accommodate and

failure to engage in the interactive process claims should be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).

**So ORDERED and SIGNED this 1st day of June, 2022.**

*[Signature]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE