**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **KEVIN RASHAAN GOLDEN,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  6:20-CV-00620-JDL** |
| | § | |
| **CITY OF LONGVIEW,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

Upon consideration of Plaintiff's motion to reconsider (Doc. No. 117) the court's memorandum opinion granting Defendant's motion for summary judgment, the court **GRANTS** Plaintiff's motion to reconsider (Doc. No. 117) as set forth herein and hereby withdraws its previous memorandum opinion (Doc. No. 114) and issues the following opinion in its place. Upon reconsideration of the Defendant's motion for summary judgment (Docket No. 97), the court alters its rationale but maintains the conclusion that Defendant's motion for summary judgment should be **GRANTED** for the reasons set forth below**.**

## BACKGROUND

Plaintiff initiated this action on November 27, 2020. (Doc. No. 1.) On August 4, 2021, the court granted Defendants' motion to dismiss all of Plaintiff's claims except for Plaintiff's Americans with Disabilities Act ("ADA") claims against Defendant the City of Longview. (Doc. No. 41.) Defendant now seeks summary judgment on the discrimination and retaliation ADA claims. (Doc. No. 97.)

1

Plaintiff claims that he suffers from Attention-Deficit Hyperactive Disorder (ADHD) and that Defendant discriminated against him because of his disability, failed to provide reasonable accommodations, and retaliated against Plaintiff for requesting such accommodations. (Doc. No. 103, at 14–33.) Plaintiff was previously employed by Defendant, on a probationary basis, as a Signs and Markings Technician. (Doc. No. 97-3, at 1–2.) Shortly after Plaintiff was hired, he informed his supervisor, Keith Covington, that he would need additional assistance because of his ADHD. (Doc. No. 103 at 6; Doc. No. 97-3, at 1.) Plaintiff states that he requested extra time, extra training, and attention. (Doc. No. 103, at 6.) Mr. Covington states that he and his team provided Plaintiff with additional instruction, additional supervision, and additional time to perform tasks. (Doc. No. 97-3.) However, Plaintiff disputes that he was provided these accommodations. (Doc. No. 103.) Over the course of his employment, there were several evaluations that documented that Plaintiff was not meeting performance expectations. (Doc. No. 97-3, at 1–2, 5–18.) Mr. Golden received several warnings regarding his performance. *Id*. at 18.

On September 12, 2018, there was an alleged incident between Plaintiff and employees Richard Comer and Steve Fleming. (Doc. No. 97-4, at 1.) According to Mr. Fleming, Plaintiff assumed that Fleming and Comer had locked Plaintiff out of a garage and Plaintiff began screaming and cussing at Mr. Comer over the phone, which Mr. Comer had placed on speaker. *Id*. Mr. Fleming states that he reported this incident to Mr. Covington the next morning. *Id*. Mr. Covington states that once he learned of Plaintiff's alleged abusive behavior, he reported it to Mr. Ha, the Manager of the Traffic Division. (Doc. No. 97-3, at 2.) On September 14, 2018, Mr. Ha sent Plaintiff a pre-termination letter, informing Plaintiff that he was recommending that Plaintiff be terminated due to Plaintiff's poor job performance and "his discourteous attitude towards a fellow employee." (Doc. No. 97-5, at 2.) On September 19, 2018, Director of Public Works, Rolin

McPhee, sent Mr. Golden a letter informing him that he had been terminated. (Doc. No. 97-5, at 3.)

## LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the

pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## DISCUSSION

Plaintiff's amended complaint is difficult to understand; however, the court reads the complaint to assert a discrimination claim, a retaliation claim, a failure to accommodate claim, and a failure to engage in the interactive process of seeking an accommodation claim under the ADA. (Doc. No. 30.) Defendant has moved for summary judgment on the discrimination and retaliation claims. (Doc. No. 97.)

4

### a.  Discrimination Claim

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 694 (5th Cir. 2014).  Under the *McDonnell Douglas* approach, a plaintiff must demonstrate a *prima facie* case of discrimination. *Id.* To establish a *prima facie* case under the ADA, Plaintiff must show that "(1) the plaintiff has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Cannon v. Jacobs Field Servs. N. Am., Inc*., 813 F.3d 586, 590 (5th Cir. 2016). If the plaintiff succeeds in establishing his *prima facie* case, then the defendant must articulate a legitimate, nondiscriminatory reason for the termination. *E.E.O.C.,* 773 F.3d at 694. Finally, the burden shifts back to the plaintiff to show that defendant's proffered reason is pretextual. *See Id.* In the summary judgment context, a case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000)).

Defendant argues that Plaintiff is not disabled within the meaning of the ADA and that he was not qualified for the job, thus failing to make a *prima facie* case. (Doc. No. 97, at 16–21.) Further, Defendant argues that even if Plaintiff can make a *prima facie* showing, Defendant has stated a legitimate non-discriminatory reason for the termination, and Plaintiff does not meet his burden of proving that the stated reason was pretextual. *Id.* at 21–23. Plaintiff responds that he

does have a disability within the meaning of the ADA, that he was qualified for the job, and that Defendant's reasons for termination are pretextual. (Doc. No. 103.)[1] Defendant's reply brief (Doc. No. 104) reiterates the same point made in the motion. Similarly, Plaintiff reiterates his points in the sur-reply. (Doc. No. 106.)[2]

i.)    <u>Direct Evidence</u>

Defendant's motion is based upon the *McDonnell Douglas* approach and does not address the issue of direct discrimination. However, in Plaintiff's response, Plaintiff states that Covington's evaluation notes provide direct evidence of discrimination. (Doc. No. 103, at 19.) Plaintiff points to the entry on August 13, 2018, which states that Covington has to "teach him as though he had the mind of a young child." (Doc. No. 103, at 19; Doc. No. 103-2, at 9.) Plaintiff also points to Covington's notes that "he never thinks for himself," and "[w]e not only have to train him about signs, we also, like a child, make him understand." (Doc. No. 103, at 19; Doc. No. 103-2, at 10, 13.) Defendant does not address this argument in its reply.

The court does not find that these statements are sufficient to constitute direct discrimination. "If an inference is required for evidence to be probative as to an employer's discriminatory animus, the evidence is circumstantial, not direct." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019). Here, the comments that Plaintiff has the mind of a child and does not think for himself could just be statements showing that Covington was unsatisfied with Plaintiff's performance and thought he was not performing the job successfully. In order to find evidence of animus, an inference would have to be drawn that Covington thought Plaintiff was performing

---

[1] Plaintiff titled Doc. No. 103 "Plaintiff's motion for summary judgment to oppose Defendant's summary judgment;" however, the court interprets Doc. No. 103 as a response.

[2] The court has considered Plaintiff's sur-reply (Doc. No. 106); however, the court did not consider Plaintiff's attachment to the sur-reply (Doc. No. 106-1), as the court granted Defendant's motion to strike the attachment to the sur-reply. (Doc. No. 111.)

poorly due to his ADHD and that Plaintiff was terminated for this reason. *See Id*. (stating that comments by managers regarding an employee who was diagnosed with Parkinson's disease that he "was never coming back to work" and "people with Parkinson's don't get better" were not sufficient to show direct discrimination because the inference had to be drawn that Plaintiff was not coming back to work due to the irreversible nature of his disability).

Thus, since the court finds that Plaintiff has not shown evidence of direct discrimination, the court turns to the *McDonnell Douglas* approach.

ii.)   *McDonnell Douglas* Framework

(1)  Is Plaintiff disabled within the meaning of the ADA?

Defendant argues that Plaintiff is not disabled within the meaning of the ADA for two reasons: (1) Plaintiff has been successful at a multitude of jobs in the past and it was only this particular job that he could not perform, even with reasonable accommodations; and (2) Plaintiff's ADHD does not substantially limit a major life activity. (Doc. No. 97, at 18.) As to the first point, Defendant interprets Plaintiff's complaint as alleging that Plaintiff's major life activity that was impacted by his ADHD is that he was unable to perform his duties as a Signs and Markings Technician. (Doc. No. 97, at 16.) Defendant argues that when the major life activity under consideration is working, Plaintiff must show that he is unable to work in a broad class of jobs, not just a particular job. *Id*. Thus, Defendant argues that Plaintiff is not disabled because the evidence of record shows that Plaintiff held various jobs over the years and stated that he has been able to perform all of the jobs successfully. *Id*. at 18. As to the second point, Defendant argues that the evidence shows that Plaintiff's other major life activities are not substantially limited by his ADHD, and thus Plaintiff is not disabled within the meaning of the ADA. *Id*.

Plaintiff responds that he has ADHD and points to a psychiatric evaluation that shows that he has a low average Contextual Verbal Learning, he has a low average Auditory Working Memory, is moderately impaired at Selective Visual Attention, and has a low average for Abstract Reasoning and Logical Analysis. (Doc. No. 103, at 15.) Thus, Plaintiff concludes that "[l]earning, reading, concentrating, and thinking are all major life activities" and he has shown he is disabled. *Id.* Plaintiff also attaches a sworn affidavit in which he discusses challenges he has faced related to concentrating and thinking quickly. (Doc. No. 103-3.) In his sur-reply, Plaintiff clarifies that he is claiming that he is disabled because his major life activities of learning, reading, and concentrating are substantially limited by his ADHD; Plaintiff states that he is not claiming that his ADHD prevents him from working. (Doc. No. 106, at 2.)

"The ADA defines the term disability in three, alternative ways. It is either (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Sechler v. Modular Space Corp.*, No. 4:10-CV-5177, 2012 WL 1355586, at *13 (S.D. Tex. Apr. 18, 2012) (citing 42 U.S.C. § 12102(1)) (internal quotations omitted).

Here, Plaintiff claims that his ADHD substantially limits his major life activities of learning, reading, concentrating, and thinking and that the psychiatric evaluation of Dr. Levi Armstrong documents the impairment. (Doc. No. 103, at 15.)

A.) <u>Substantial Limitation of a Major Life Activity</u>

In 2008, the ADA Amendments Act of 2008 was passed and is incorporated into the current ADA. 42 U.S.C. § 12102(4)(A). Of note, the Amendments Act of 2008 expanded the definition of "major life activities" to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

thinking, communicating, and working. 42 U.S.C.A. § 12102 (2)(A) (2009). The limitation that the impairment places on a major life activity must be "substantial." § 12102 (1)(A). To be substantial, an impairment must limit the ability of an individual to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). This standard is to be "construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i).

Plaintiff argues that his ADHD substantially limits his major life activities of learning, reading, concentrating, and thinking. (Doc. No. 103, at 15.) Plaintiff references the psychiatric report of Dr. Armstrong, that he claims proves that he is substantially limited in major life activities as it states that Plaintiff has symptoms "consistent with longstanding ADHD," that have a mild to moderate impact on certain aspects of his life. (*See* Doc. 103-2, at 38–44.) Plaintiff references four categories: a low average Contextual Verbal Learning, a low average Auditory Working Memory, moderately impaired at Selective Visual Attention, and a low average for Abstract Reasoning and Logical Analysis. (Doc. No. 103, at 15.) Plaintiff also attaches a sworn affidavit, in which he states that while he worked at E-tech services, he would get distracted by other employees and had difficulty typing 35–40 words per minute, and that his supervisor allowed him to work the night shift and gave him a cubicle far away from other employees. (Doc. No. 103-3, at 4.) Plaintiff also states that when he worked at Tyson foods he worked in a cold environment, lifting heavy products, and was on his feet hours at a time and that because of this he would get very hyper sometimes due to being tired. *Id.* at 4–5. Plaintiff states that after several hours of work he would occasionally ask to go to the restroom; he states that management allowed him to take an additional small break to eat a snack to get re-energized, and describes another occasion at Tyson foods where he was too slow at separating meat product and because of this was switched to a position where he could rotate between jobs. *Id.*

9

Defendant asserts that Plaintiff's testimony demonstrates that Plaintiff's normal life activities are not substantially limited by his ADHD. (Doc. No. 97, at 4.) Plaintiff testified that he pays his own bills, manages his money, drives, cooks, cleans, does his grocery shopping, takes care of himself, and reads "constructive" books such as books about history, astronomy, astrology, science, and religion. (Doc. No. 97-1, at 12–14.) Plaintiff also testified that he graduated from high school without taking any special education courses. *Id.* at 8. Further, Plaintiff testified to holding a multitude of jobs throughout his life and stated that he was able to perform them all well. *Id.* at 17–38.

The court acknowledges that its prior analysis relied on jurisprudence that predated the 2008 Amendments Act, which is of relevance to the case at hand. (Doc. No. 114.) While the statutory language affected by the amendment does not foreclose the possibility of reaching the court's prior conclusion, the court acknowledges that the interpretation of the amendments by courts post-2008 has been significantly broadened with respect to disability findings. Specifically, the Fifth Circuit has acknowledged that the substantially limits consideration on summary judgment creates a "relatively low bar." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 448 (5th Cir. 2018).

Here, Plaintiff has submitted a declaration that states he had trouble concentrating at work, experienced fatigue, would get hyper and required breaks to refocus, and was too slow to perform certain tasks of past work, all on account of his ADHD. (Doc. No. 103-3.) The court finds that Mr. Golden's declaration is sufficient to create a genuine issue of material fact with respect to disability. *See, e.g., Williams,* 717 F. App'x at 448 ("In the light of the relatively low bar created by the substantially-limits and summary-judgment standards, [Plaintiff's] declaration creates a genuine dispute of material fact for whether her impairments are substantially limiting."); *Mercer*

*v. Arbor E & T, LLC*, 2013 WL 164107, at *13 (S.D. Tex. Jan. 15, 2013) ("even if the Court confined it's analysis to [plaintiff's] deposition testimony alone, she ... demonstrate[d] a genuine [dispute] of material fact regarding whether [she] is disabled"); *Sechler*, 2012 WL 1355586, at *11 ("In light of the 'substantially limits' standard created by the [ADA Amendments Act of 2008], the Court thinks it appropriate to read [plaintiff's] testimony as giving rise to a genuine [dispute] of material fact"). Further, Dr. Armstrong's report finding that Plaintiff is in the low average range on many categories, and recommending academic accommodations for Plaintiff due to his ADHD (Doc. No. 103-2, at 39, 43–44), provides additional support that Plaintiff is substantially limited in major life activities on account of his ADHD. *See Pritchard v. Fla. High Sch. Athletic Ass'n, Inc.*, No. 2:19-CV-94-FTM-29MRM, 2020 WL 3542652, at *6 (M.D. Fla. June 30, 2020) (finding that Plaintiff raised a genuine dispute of material fact as to whether his learning disability affected his ability to learn because he scored below average in reading and math and accommodations were recommended to help plaintiff learn even though "the psychological evaluation indicates plaintiff scored in the average range across a variety of subjects" and took some honors courses in high school.)

Although, Plaintiff has done enough to create a genuine issue of material fact regarding disability, the court's conclusion on summary judgment with respect to Plaintiff's ADA discrimination claim must remain the same for the reasons explained below. Previously, the court did not render an analysis beyond that of disability, as it was unnecessary. *See* Doc. No. 114, at 12. However, having now found a genuine issue of material fact with respect to disability, the court must continue with its analysis of the remaining requirements for Plaintiff's discrimination claim.

(2) <u>Legitimate Non-Discriminatory Reason for Termination</u>

Defendant states that even if Plaintiff could make a prima facie showing of discrimination, Defendant can show that Plaintiff was terminated for legitimate non-discriminatory reasons. (Doc. No. 97, at 21.)

If Plaintiff makes a prima facie showing, a presumption of discrimination arises. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016). However, Defendant can rebut the presumption "by articulating legitimate business reasons for the adverse action." *Id.*

Here, Defendant states that Plaintiff was terminated "based solely upon his poor job performance and his documented disrespectful and abusive behavior with his co-employees, both in violation of established City of Longview policies." (Doc. No. 97, at 23.) Thus, the court finds that Defendant has stated a legitimate, nondiscriminatory reason for terminating Plaintiff.

(3) <u>Pretext</u>

If Defendant states a legitimate, nondiscriminatory reason for termination, the Plaintiff "must offer evidence to show that reason was pretext for discrimination." *Rodriguez*, 820 F.3d at 765. The Plaintiff must "produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Cannon*, 813 F.3d at 590. The Plaintiff "must rebut each nondiscriminatory ... reason articulated by the employer." *Rodriguez*, 820 F.3d at 765.

Defendant states that Plaintiff cannot meet his burden to show that Defendant's stated reasons for termination were pretextual. (Doc. No. 97, at 23.) Plaintiff argues that he has presented sufficient evidence to show pretext. (Doc. No. 103, at 26–31.) Specifically, Plaintiff states several reasons that he claims prove that Defendant's stated reasons are pretextual. *Id.* The court finds that Plaintiff has not provided sufficient evidence to meet his burden to show pretext and thus finds that Defendant's motion for summary judgement on the discrimination claim should be granted.

First, Plaintiff states that he has shown pretext because Covington has provided perjured,[3] false, and inaccurate statements. (Doc. No. 103, at 26–27.) Plaintiff claims that Covington stated that Plaintiff could not make a sign or perform his job tasks. *Id*. However, Plaintiff claims that these statements are false because Plaintiff has provided emails demonstrating that Plaintiff successfully completed job tasks. *Id*. However, the court has found no such emails in the record.

Second, Plaintiff states that he has shown pretext because Defendant has failed to provide any documents that show that Plaintiff could not perform the job and because Defendant failed to provide any documents that show Plaintiff engaged in abusive behavior. *Id*. at 27. Plaintiff asserts that the written awareness warning is not enough to show that he could not perform the job well because it only encompassed a small fraction of his job duties. *Id*. Further, Plaintiff argues that Defendant does not have an affidavit from Mr. Comer, the individual that Plaintiff was allegedly verbally abusive to. *Id*. Plaintiff's statements are simply not consistent with the evidence of record. There are several documents that show that Plaintiff was not performing well at his job. Mr. Covington, Plaintiff's supervisor, documented multitudes of instances of Plaintiff's poor performance over the course of two months. (Doc. No. 97-3, at 5–14.) Defendant has also submitted several other letters and notes documenting Plaintiff's poor performance. *Id*. at 15–18. Defendant also submitted the affidavit of Mr. Fleming, who was a witness to the telephone conversation between Plaintiff and Mr. Comer; Fleming's affidavit states that Plaintiff was verbally abusive to Mr. Comer. (Doc. No. 97-4, at 1.) Thus, Plaintiff's statements that there is no documentation regarding his poor performance and alleged instance of verbal abuse are simply incorrect. Plaintiff cites to of *Burton v. Freescale Semiconductor, Inc*., 798 F.3d 222, 240 (5th Cir. 2015) for the proposition that "a lack of contemporaneous documentation coupled with evidence

---

[3] To the extent Plaintiff argues that Covington committed perjury during his deposition, the court has found that Plaintiff provided no evidence to demonstrate this allegation. *See* Doc. No. 110.

that such documentation should exist" can be evidence of pretext. (Doc. No. 103, at 27.) However, in *Burton*, the documentation of poor performance was created after the termination decision. *Burton*, 798 F.3d at 240. This is different from the current case where there is documented proof of poor performance prior to Plaintiff being terminated.

Third, Plaintiff states that Defendant has offered a reason for termination that is so subjective and essentially meaningless that it provides proof of pretext. (Doc. No. 103, at 28.) Plaintiff implies that he was terminated because Covington thought that he was not a "perfect fit" for the job. *Id*. However, as discussed at length above, Defendant states that Plaintiff was terminated because he could not perform the job duties and because he had an aggressive outburst. At no point does Defendant argue that Plaintiff was terminated because he was not a perfect fit.

Fourth, Plaintiff argues that Defendant's reason for termination is factually false. *Id*. at 29. Plaintiff generally reiterates his argument that Defendant has not provided documentation that Plaintiff could not perform the job and has not provided documentation of his aggressive outburst. *Id*. As discussed above, this is simply not accurate and more importantly, Plaintiff provides no evidence that he could perform the job duties.

Fifth, Plaintiff states that Defendant failed to follow company policy when dealing with Plaintiff's alleged aggressive outburst. *Id*. at 30. Plaintiff states that Defendant did not comply with its "corrective action" policy. *Id*. Plaintiff does not cite to any specific page of the policy. However, Defendant's Personnel Policies and Procedures handbook states that "[d]iscourteous, offensive, or abusive behavior either by attitude, language or conduct, to the public or to fellow employees while in the line of duty," is an example that qualifies for prompt corrective action and/or termination from employment. (Doc. No. 103-2, at 6.)

14

Sixth, Plaintiff states that he has shown pretext because Mr. Comer, another employee of Defendant who allegedly has no mental disability committed nearly identical acts of misconduct under similar circumstances but was treated differently. (Doc. No. 103, at 30–31.) Plaintiff states that Covington testified that once he warns employees "once, twice, three times for the same thing," the employee receives a disciplinary infraction. *Id*. at 31. Plaintiff then seems to argue that Mr. Comer also had inefficient job performance warnings, but did not receive disciplinary actions like Plaintiff and was not terminated because of them. *Id*.

"To support a claim of disparate treatment, a plaintiff may present evidence that a similarly situated coworker was given more favorable treatment." *Robles v. Texas Tech Univ. Health Scis. Ctr*., 131 F. Supp. 3d 616, 627 (W.D. Tex. 2015). Employees who "are subjected to adverse employment action for dissimilar violations are not similarly situated." *Id*. (quoting *Lee v. Kansas City S. Ry. Co*., 574 F.3d 253, 259–60 (5th Cir. 2009). The actions of a fellow employee who is offered as a comparator must have occurred "under nearly identical circumstances," which includes having "essentially comparable violation histories." *Id*. at 627–28. Further, "the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id*. at 628.

Here, Plaintiff has not shown that he and Mr. Comer were similarly situated, nor has Plaintiff shown disparate treatment. The only evidence in the record concerning Mr. Comer is a written awareness warning. (Doc. No. 97-3, at 18.) The awareness warning states that Mr. Comer and Plaintiff had been verbally warned several times about the proper way to complete a work order and neither Mr. Comer nor Plaintiff were completing the work order forms properly. *Id*. Thus, Mr. Comer and Plaintiff were both disciplined in the same manner for the same infraction. Plaintiff indicates that he was terminated for the awareness warning while Mr. Comer was not.

15

(Doc. No. 103, at 31, n. 75.) However, Plaintiff was not terminated solely because of the awareness warning. Plaintiff was terminated for a continuous lack of satisfactory performance and for an aggressive outburst. Plaintiff does not provide any evidence that Mr. Comer has an essentially comparable violation history to Plaintiff. There is no allegation that Mr. Comer had an aggressive outburst, nor is there any evidence that Mr. Comer has a nearly identical record of the same poor performance as Plaintiff. Further, when Mr. Comer committed the same infraction as Plaintiff, Mr. Comer received the same written awareness warning that Plaintiff did. (Doc. No. 97-3, at 18.) Thus, Plaintiff has failed to establish that a similarly situated coworker was given more favorable treatment.

Seventh, Plaintiff argues that Covington's demeaning comments about Plaintiff's "cognitive thinking abilities" are evidence of pretext. (Doc. No. 103, at 28.) Here, two out of three of the comments that Plaintiff references were made over a month before Plaintiff was terminated. (Doc. No. 103-2, at 8–17.) Plaintiff has provided no evidence that links Covington's comments to Plaintiff's termination. *See Angell v. Fairmount Fire Prot. Dist.*, 907 F. Supp. 2d 1242, 1252 (D. Colo. 2012) (stating that "[f]or a statement to constitute evidence of discrimination (rather than a stray remark), the plaintiff must show that it was made by a decision maker, and that there was a nexus between the discriminatory statement and the decision to terminate") (internal quotations omitted). Thus, the court finds that these comments are insufficient to show pretext.

Further, it appears that Plaintiff is arguing that he has shown pretext due to the temporal connection between his request for accommodations, the negative performance evaluations, and his termination. (Doc. No. 103, at 17, 25.) Plaintiff states that he has shown pretext because he was hired on July 5, 2018, informed Mr. Covington of his ADHD and requested reasonable accommodations on July 31, 2018, and only after this request for accommodations did Covington

start documenting Plaintiff's poor job performance. (Doc. No. 103, at 22.) Plaintiff implies that asking for accommodations on July 31 eventually led to his termination on September 19. However, temporal proximity, by itself, is insufficient to establish pretext. *Burton*, 798 F.3d at 240; *Mancini v. Accredo Health Grp., Inc.*, 411 F. Supp. 3d 243, 253 (D. Conn. 2019). Further, Defendant has stated a reason for the temporal proximity: that it terminated Plaintiff due to a report of an inappropriate outburst towards another employee that occurred only *one week* prior to his termination. *See Sechler,* 2012 WL 1355586, at *13 (finding Plaintiff failed to raise a genuine dispute of material fact as to pretext because Defendant stated a legitimate nondiscriminatory reason both for the termination and for the timing of the termination). Thus, Plaintiff has failed to create a genuine dispute of material fact that Defendant terminated Plaintiff due to Plaintiff's request for reasonable accommodations.

Plaintiff also appears to argue that he has shown pretext because he denies yelling or using profanity in the alleged outburst incident. (Doc. No. 103, at 6, 18, 25; Doc. No. 106, at 4-5.) Plaintiff states that he was not given the opportunity to contest the allegations since he was not working the day that the outburst incident was reported to Covington. (Doc. No. 103, at 18.) However, even though Plaintiff disputes the nature of the incident, he does not deny that some type of altercation occurred. During Plaintiff's deposition, he stated that he did not use profanity and was not disrespectful; however, Plaintiff stated that he was direct, and "came at them in a way to make them feel like y'all wasn't trying to be team members … I'm quite sure they didn't like that language…" (Doc. No. 97-1, at 49.) Thus, although Plaintiff raises some factual disputes underpinning the confrontation that occurred on September 12, 2018—namely that, he did not use profanity—the undisputed record shows that indeed a confrontation between Plaintiff and

coworkers occurred on September 12, 2018, and that Plaintiff was terminated shortly thereafter as a result. (Doc. No. 97-1; Doc. No. 97-5.)

Finally, to the extent Plaintiff relies on evidence from the Texas Workforce Commission's ("TWC") report (Doc. No. 106, at 5) to contend he was not fired for misconduct and Defendant's proffered reason for termination is pretext, this argument also fails. The Texas Workforce Commission's report cannot be used as evidence in a lawsuit, and thus cannot be considered by the court. *See Williams v. Aviall Servs., Inc.,* 76 F. App'x. 534, 536 (5th Cir. 2003) ("Under Texas law, the Texas Workforce Commission's findings and conclusions may not be used as evidence in lawsuits."); *Dortch v. Mem'l Herman Healthcare Sys.-Sw.*, 525 F. Supp. 2d 849, 865 (S.D. Tex. 2007) (declining to consider the TWC Appeal Tribunal finding that Plaintiff's discharge was not for work-related misconduct on summary judgment as such evidence may not be used in lawsuits).

For these reasons, the court finds that Plaintiff has failed to raise a genuine dispute of material fact that Defendant's reasons for termination were pretextual and summary judgment is therefore appropriate as to Plaintiff's discrimination claim.

### b.  Retaliation Claim

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) the employer took an adverse action against him; and (3) there was a causal connection between the adverse action and the protected activity. *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation,

which the employee accomplishes by showing that the adverse action would not have occurred but for the employer's retaliatory motive." *Id.* at 454 (internal citations omitted).

i.)     Causal Connection

Defendant argues that Plaintiff has failed to show a causal connection between the protected activity and the adverse employment action. (Doc. No. 97, at 25.) Defendant states that it reads Plaintiff's complaint to state that the protected activity was Plaintiff's request for reasonable accommodations. *Id.* Defendant argues that since Plaintiff requested the accommodations on July 31, 2018, and Plaintiff was terminated on September 19, 2018, after documented poor job performance and documented disrespectful and abusive behavior, Plaintiff cannot show that "but for" the request for accommodations, Plaintiff would not have been terminated. *Id.* at 25–26. Plaintiff argues that he can show a causal connection because he was hired on July 5, 2018, informed Mr. Covington of his ADHD and requested reasonable accommodations on July 31, 2018, and only after this request for accommodations did Covington start documenting Plaintiff's poor job performance. (Doc. No. 103, at 22.) Further, Plaintiff argues that after he received the pre-termination letter from Mr. Ha, he complained to Robyn Edwards that Covington was discriminating against Plaintiff and then Plaintiff was terminated. *Id.* at 22–25.

"A causal link is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019) (internal quotations omitted). Regarding Plaintiff's argument that the request for accommodations led to his termination, the court finds that Plaintiff has raised a genuine dispute of material fact as to whether there is a causal link. Plaintiff complains that Covington started documenting Plaintiff's poor performance after Plaintiff requested

19

reasonable accommodations. (Doc. No. 103, at 22.) The protected activity here is the request for accommodations made on July 31, 2018, and the adverse action is Plaintiff's termination on September 19, 2018. Plaintiff seems to be claiming that there is a temporal connection that demonstrates the causal link between requesting accommodations and being terminated.

The Fifth Circuit has stated that a temporal connection on its own is not sufficient to establish a causal link, unless the timeframe is very short. *See Gosby v. Apache Indus. Servs., Inc.,* 30 F.4th 523, 527 (5th Cir. 2022) (stating that, "[i]n retaliation cases, temporal proximity between protected activity and adverse employment action is sometimes enough to establish causation at the *prima facie stage*. This guidance is qualified, though: The protected act and the adverse employment action must be very close in time.") (internal quotations omitted). In *Gosby*, the court noted that one week qualified as "very close in time." *Id.* The Fifth Circuit also stated that, "[w]e have ruled, for example, that a six-and-a-half-week timeframe is sufficiently close, but that a five month lapse is not close enough, without other evidence of retaliation, to establish the "causal connection" element of a prima facie case of retaliation.") *Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 305 (5th Cir. 2020). Here, the protected activity occurred six weeks prior to Plaintiff's termination. Thus, the court finds that the six-week gap between protected activity and an adverse employment action is sufficient to raise a genuine dispute of material fact as to the causal link element under the governing caselaw.

ii.)    Pretext

Even though Plaintiff has raised a genuine dispute of material fact as to the causal link element, the court finds that summary judgment is still appropriate because Plaintiff has not raised a genuine dispute of material fact that Defendant's reason for termination was pretextual. As discussed above, Defendant has stated a legitimate non-discriminatory reason for termination: poor

20

performance and an aggressive outburst. "At [this] point, in response to a motion for summary judgment, an employee must present substantial evidence that the employer's legitimate, nondiscriminatory reason for termination is pretextual." *Gosby*, 30 F.4th at 527.

Even though temporal proximity alone can be sufficient to establish a causal link, it is not sufficient to establish pretext. *See Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 306–07 (5th Cir. 2020) (stating that "[v]ery close temporal proximity is sufficient to establish the "causal connection" element of her *prima facie* case, but it is insufficient to demonstrate pretext.) (internal quotations omitted). "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Nall*, 917 F.3d at 349.

Plaintiff has not shown that but for his request for accommodations he would not have been terminated. Further, the evidence of record indicates that the determinative event that resulted in Plaintiff's termination was Plaintiff's aggressive outburst towards his co-workers. According to Covington's notes, Plaintiff had been performing poorly for almost two months. (Doc. No. 97-3, at 5–14.) However, Covington's recommendation to Mr. Ha that Plaintiff be terminated occurred almost immediately after Plaintiff's outburst, which occurred on September 12, 2018. (Doc. No. 97-3, at 2.)

On September 14, 2018, only two days after the alleged outburst, Mr. Ha recommended to his director that Plaintiff be terminated and Mr. Ha sent Plaintiff the pre-termination letter. (Doc. No. 97-5, at 2.) Director McPhee subsequently terminated Plaintiff on September 19, 2018, stating that the reason for termination was Plaintiff's poor performance and the aggressive outburst. *Id*. at 3. Plaintiff states in his sur-reply that he "made clear to Covington that he did not commit the verbal assault against Richard Comer." (Doc. No. 106, at 4.) During Plaintiff's deposition, he stated that he did not use profanity and was not disrespectful; however, Plaintiff stated that he was

direct, and "came at them in a way to make them feel like y'all wasn't trying to be team members ... I'm quite sure they didn't like that language..." (Doc. No. 97-1, at 49.)

Thus, the evidence indicates that this incident was determinative in Covington's decision to recommend that Plaintiff be terminated, and in Mr. Ha and Director McPhee's decision to terminate Plaintiff. As such, Plaintiff fails to raise a triable issue of fact that he was terminated because of his request for accommodations. *See Seaman v. CSPH, Inc*., 179 F.3d 297, 301 (5th Cir. 1999) (finding that an employee failed to show that his termination was retaliatory when he informed his supervisor that he had filed a discrimination complaint and was then terminated moments later, because there was sufficient evidence to show that the employee had been terminated for insubordination when he yelled at his supervisor on the phone).

To the extent that Plaintiff claims that he was terminated because he informed Robyn Edwards that he wanted to file a discrimination complaint against Covington one day before the final termination letter came down, the court finds that Plaintiff has not raised a triable issue of fact that he would not have been terminated had he not stated that he wanted to file a discrimination complaint. Mr. Ha's pre-termination letter had already recommended to Director McPhee that Plaintiff be terminated several days before the final termination letter was issued. (Doc. No. 97-5, at 2–3.) Thus, it is clear from the evidence that the decision to terminate Plaintiff had already been set in motion before Plaintiff ever requested the discrimination investigation.

For these reasons, Plaintiff has failed to raise a triable issue of fact that Defendant's stated reason for termination was pretext for retaliation and summary judgment is appropriate. Thus, the court finds that Defendant's motion for summary judgment on the retaliation claim should be granted.

### c.  Failure to Engage in the Interactive Process Claim

Plaintiff also asserts that Defendant failed to engage in the interactive process of giving Plaintiff a reasonable accommodation. (Doc. No. 30, at 36–43.) Defendant does not address this argument independently. However, several Circuits have held that the failure to engage in the interactive process is not an independent claim. *See Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) (stating that "a failure to engage in a good faith interactive process is not an independent violation of the ADA"); *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (finding that "[i]n this circuit, failure to engage in the interactive process does not give rise to an independent claim. Instead, it is a violation of the ADA only if the plaintiff establishes a *prima facie* case of failure to accommodate.") (internal citations omitted); *Murphy v. Sec'y, U.S. Dep't of Army*, 769 F. App'x 779, 782 (11th Cir. 2019) (stating that "[t]here is no independent cause of action for bad faith interactive process.")

Thus, the court finds that to the extent Plaintiff intended to plead a separate claim for failure to engage in the interactive process, this does not create a standalone claim and should be dismissed, with prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2). Moreover, given Plaintiff's allegations, the court considers such a claim to be subsumed in Plaintiff's failure to accommodate claim, which remains before the court.

### CONCLUSION

For the reasons stated above, Plaintiff's motion to reconsider (Doc. No. 117) is **GRANTED** as set forth herein.  Defendant's motion for summary judgment (Doc. No. 97) is **GRANTED** as to Plaintiff's discrimination and retaliation claims and those claims are **DISMISSED** with prejudice. Further, the court finds that Plaintiff's failure to engage in the interactive process claim should be **DISMISSED** with prejudice for failure to state a claim upon

which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). Defendant did not move on summary judgment as to Plaintiff's failure to accommodate claim and the court declines to *sua sponte* consider it in light of its rulings contained herein at this time. As such, Plaintiff's failure to accommodate claim remains before the court for trial. The court's previous memorandum and final judgment (Doc. Nos. 114, 115) are **WITHDRAWN**. The clerk of court is directed to **RE-OPEN** this case. A scheduling order as to the remaining claim for failure to accommodate will be forthcoming. Plaintiff's pending post-judgment motions (Doc. Nos. 116, 118, 124) are **DENIED** as moot in view of the court's rulings herein.

**So ORDERED and SIGNED this 11th day of July, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE