## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **KEVIN RASHAAN GOLDEN,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.  6:20-CV-00620-JDL** |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF LONGVIEW, PUBLIC WORKS** | § | |
| **DIVISION;** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant the City of Longview's ("Defendant") motion for summary judgment. (Doc. No. 143.) Plaintiff Kevin Golden has filed a response (Doc. Nos. 156; 162)[1], to which Defendant has filed a reply (Doc. No. 157). Upon consideration, Defendant's motion for summary judgment (Doc. No. 143) is **GRANTED**.

## BACKGROUND

Plaintiff initiated this action on November 27, 2020. (Doc. No. 1.) On August 4, 2021, the court granted Defendants' motion to dismiss all of Plaintiff's claims except for Plaintiff's Americans with Disabilities Act ("ADA") claims against Defendant the City of Longview. (Doc. No. 41.) Defendant thereafter moved for summary judgment on Plaintiff's ADA discrimination and retaliation claims. (Doc. No. 97.) In an amended memorandum opinion and order issued on

---

[1] Plaintiff filed a motion to exceed the page limit in his response. (Doc. No. 154.) The court denied his motion (Doc. No. 155), but Plaintiff filed his response in excess of the page limit before the court's order was filed (Doc. No. 156). Plaintiff later filed a response compliant with the 30-page limit. (Doc. No. 162.) The court considers both responses out of fairness. Much of Plaintiff's response, however, rehashes his discrimination claim that Defendant discharged him after learning of his disability. (Doc. No. 156, at 16–18, 20, 23.) The court granted Defendant's summary judgment motion on Plaintiff's discrimination claim. (Doc. No. 129.) Thus, the court will not consider the merits of those arguments herein.

July 11, 2022, the court granted Defendant's motion for summary judgment (Doc. No. 97) finding that: (1) summary judgment was appropriate as to Plaintiff's discrimination claim as Plaintiff had failed to raise a genuine dispute of material fact that Defendant's reasons for termination were pretextual; (2) summary judgment was appropriate on Plaintiff's retaliation claim  as Plaintiff had failed to raise a triable issue of fact that Defendant's stated reason for termination was pretext for retaliation; and (3) to the extent Plaintiff intended to plead a separate claim for failure to engage in the interactive process, such a claim should be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (Doc. No. 129.) The court dismissed the ADA discrimination and retaliation claims, as well as the failure to engage in the interactive process claim with prejudice. *Id.* The court noted that Plaintiff had also asserted a claim for failure to accommodate but given the confusing nature of his lengthy pleadings in this matter, it appears that Defendant did not move for summary judgment on that claim. The court therefore issued a scheduling order on the sole remaining failure to accommodate claim in this matter. (Doc. No. 130.) The court granted Defendant an extension (Doc. Nos. 141; 150) to move for summary judgment on this claim, upon a showing of good cause, and Defendant filed the instant motion for summary judgment as to Plaintiff's failure to accommodate claim on September 8, 2022 (Doc. No. 143).

## I.      Plaintiff's Failure to Accommodate Allegations

In his amended complaint, Plaintiff asserts that he was previously employed by Defendant, on a probationary basis, as a Signs and Markings Technician. (Doc. No. 30, at 24, 30–31.) Plaintiff alleges that Defendant was aware of his mental disability—Attention-Deficit Hyperactive Disorder ("ADHD"). *Id.* at 27, 49. He alleges that he informed Keith Covington, his supervisor, of instances where he may need assistance to effectively perform his job because he gets distracted and has

2

difficulty thinking and concentrating. *Id.* at 49. Plaintiff states that he requested reasonable accommodations to assist in his job performance. *Id.* Plaintiff alleges that he requested Mr. Covington be "patient" with him but maintains that Defendant failed to provide his requested accommodations. *Id.* at 28, 49–50.

## II.     Summary Judgment Evidence

Attached to the instant motion for summary judgment, Defendant includes: (1) the transcript of Plaintiff Kevin Golden's deposition on November 4, 2021 (Doc. No. 143-1); (2) the affidavit of Robyn Edwards (Doc. No. 143-2); and (3) the affidavit of Keith Covington (Doc. No. 143-3). In addition to Defendant's evidence, Plaintiff provides: (1) the affidavit of Kevin Golden (Doc. No. 156-2); (2) the audio recordings of Keith Covington's deposition; (3) the audio recording of Kevin Golden informing Keith Covington about his disability; (4) the audio recording of Robyn Edwards's deposition; (5) the audio recording of Kevin Golden's first encounter with Robyn Edwards; (6) the audio recording of Mary Miller's deposition; (7) Defendant's human resource policies (Doc. No. 156-3, at 4–14, 92–104); (8) a written warning Kevin Golden received from Defendant, *id.* at 30; (9) Kevin Golden's job history, *id.* at 32–36; (10) Kevin Golden's termination letters, *id.* at 38, 40–41; (11) emails Kevin Golden sent to Keith Covington while employed by Defendant, *id.* at 48–67; and (12) Kevin Golden's medical records, *id.* at 69–90. A summary of the relevant evidence is discussed below.

### a.   Plaintiff's Deposition Testimony

In Plaintiff's deposition, he testified that he was able to perform the essential functions of the jobs he held prior to working for Defendant. (Doc. No. 143-1, at 16–27, 29–35.) He also testified that he engaged in normal life activities such as driving, exercising, reading, cooking, and

cleaning despite his disability. *Id.* at 10–12, 14. Regarding his employment with Defendant, Plaintiff testified that he performed the essential functions of a Signs and Markings Technician without accommodation. *Id.* at 44–46, 50, 53–54.

### b.  Affidavit of Keith Covington

In his affidavit, Mr. Covington, a Traffic Signal Supervisor for Defendant, and Plaintiff's direct supervisor, avows that shortly after Plaintiff was hired, Plaintiff informed him that he had ADHD but did not take his prescribed medications. (Doc. No. 143-3, at 1.)  He admits that Plaintiff asked for additional assistance to perform the essential functions of his job, and he agreed to provide additional assistance. *Id.*   Mr. Covington maintains that he, along with Plaintiff's coworkers, Chris Walker and Richard Comer, provided Plaintiff with additional time, training, and supervision to perform his job duties. *Id.* He also asserts that despite the additional help, Plaintiff's performance of his essential job functions did not improve. *Id.*  Mr. Covington maintains that until his termination, Plaintiff failed to follow instructions and adequately perform the essential functions of his job. *Id.*  Mr. Covington includes the notes he recorded regarding Plaintiff's job performance. *Id.* at 1–2, 5–20.  The notes indicate that Plaintiff:

- Applied markings at a traffic project incorrectly, creating a public safety hazard;

- Used his time inefficiently;

- Submitted incomplete paperwork;

- Failed to prepare for assigned tasks;

- Failed to follow instructions;

- Failed to respond to service calls in a timely manner;

- Refused to work with coworkers;

- Failed to follow the process for work orders;

- Used his personal phone during training;

- Failed to follow verbal and written instructions; and

- Failed to prioritize his assignments.

*Id.* at 1–2. He also provides specific instances where Plaintiff was provided with additional training and supervision. Mr. Covington acknowledges that:

- Plaintiff was provided with specific instructions of location and where to install markers, but he installed them horizontally instead of vertically. *Id.* at 5.

- Plaintiff submitted an incomplete service request and Mr. Covington had to retrain him on "something we have been training him to do since he started." *Id.*

- Plaintiff did not have the necessary supplies for the project, and Mr. Covington had to explain Plaintiff's assignment again. *Id.* at 7.

- Plaintiff was not doing work assigned to him but was looking for additional work. He would not listen to Mr. Walker's advice on completing the work assigned. *Id.* at 8.

- Plaintiff submitted incomplete work orders and received a written awareness warning from Mr. Covington. *Id.* at 8.

- Plaintiff continued to struggle with submitting work orders. Mr. Covington had to explain the work order process again. *Id.* at 9–10.

- Plaintiff had to sit down with Mr. Walker to learn about making signs. Plaintiff was on his phone, not paying attention. *Id.* at 10.

- Mr. Walker brought Plaintiff to Mr. Covington to explain how to complete work orders and service requests again. *Id.* at 11.

Mr. Covington asserts that both Plaintiff and Mr. Comer struggled with pre-planning their time and assignments. *Id.* at 7.

Mr. Covington also identifies the essential job functions of a Signs and Markings Technician. *Id.* at 3–4. The primary duties of a Signs and Markings Technician include:

- Using computer aided graphics software applications to create traffic sign design and lettering;

- Designing and fabricating standard and customized signs in accordance with city standards and the Manual on Uniform Traffic Control Devices;

- Operating, maintaining, and cleaning sign shop equipment;

- Managing sign shop inventory by ordering paint, materials, parts, and supplies;

- Assisting with street stripping and pavement markings and maintaining equipment;

- Creating specialty signs and decals for city departments;

- Preparing estimates for special projects and damage recovery;

- Maintaining necessary records of installation, location, maintenance, and repairs of traffic signs and devices;

- Creating a daily log of incident and accident reports;

- Following all safety rules and regulations on the job site;

- Closely following verbal and written instructions and procedures; and

- Performing other related duties as assigned or required.

*Id.*

### c.  Affidavit of Plaintiff

In his affidavit, Plaintiff maintains that he did not realize his position as a Signs and Markings Technician required speed and multitasking skills, and once he realized this, he informed Mr. Covington about his ADHD and requested an accommodation. (Doc. No. 156-2, at 3.) Plaintiff acknowledges that Mr. Walker's training techniques were too fast and complex, which led him to request patience, effective communication, and assistance with multitasking from Mr. Covington.

6

*Id.* at 3–4. Plaintiff avows that Mr. Covington did not ask for his medical records evidencing his ADHD diagnosis. *Id.* at 1. Plaintiff also avows that Mr. Covington told him that he did not inform any other employees about Plaintiff's disability, his requested accommodations, or the accommodations provided. *Id.* at 6. He admits that Mr. Covington agreed to provide his requested accommodations but asserts that he did not do so. *Id.* at 3–4. Plaintiff further maintains that he did not receive any notice of the accommodations Defendant provided for his ADHD nor did he agree to the accommodations provided. *Id.* at 2. Plaintiff asserts that Mr. Walker was reassigned to a new position and Mr. Comer, another probationary Signs and Markings Technician, took over training Plaintiff. *Id.* at 4–5. He admits that he and Mr. Comer received training from Mr. Covington after submitting incomplete work orders and that they both continued to incorrectly submit work orders after this training. *Id.* at 2. Plaintiff also maintains that when he informed his previous employers about his ADHD, they accommodated him so he could perform the essential functions of his jobs. *Id.* at 5.

### d.   Audio Recording of Plaintiff's Conversation with Keith Covington

In the audio recording, Plaintiff informs Mr. Covington that he suffers from ADHD. He requests Mr. Covington be patient, provide effective communication, and assist with multitasking to accommodate his ADHD, and Mr. Covington agrees to accommodate Plaintiff.

### e.   Written Warning

On September 5, 2018, Mr. Covington provided Plaintiff and Mr. Comer with written warnings for submitting incomplete work orders. (Doc. No. 156-3, at 30.) The warning indicates that it was a final warning and more serious action would be taken if their performance did not improve. *Id.*

### f.   Plaintiff's Job History

Plaintiff's job history indicates that he was employed by E-Tech Services as a chat sales employee for Verizon Wireless. *Id.* at 33. In this position, Plaintiff struggled to type 35–40 words per minute and was distracted by other employees. *Id.* After learning of his ADHD, E-Tech Services accommodated Plaintiff by moving him to the night shift and away from other employees who distracted him. *Id.* They also provided "short cuts" to enable Plaintiff to respond to customers in a timely manner. *Id.*

Plaintiff also worked for Tyson foods as a general floor worker and union steward. *Id.* As a general floor worker, Plaintiff had difficulty staying focused in a cold environment doing heavy lifting for hours at a time. *Id.* After learning of his ADHD, Tyson Foods allowed Plaintiff to take a short break to eat a snack and reenergize. *Id.* at 34. As a union steward, Plaintiff struggled to separate food in a fast-paced environment. *Id.* at 35. After learning of his ADHD, they allowed Plaintiff to rotate between jobs. *Id.*

### g.   Termination Letters

On September 14, 2018, Plaintiff received a letter from Defendant recommending that he be terminated. *Id.* at 38. The letter reveals that Defendant's articulated reasons for discharging Plaintiff were submitting incomplete work orders and making discourteous remarks to coworkers. *Id.* On September 19, 2018, Plaintiff was terminated. *Id.* at 40.

### h.   Plaintiff's Emails to Keith Covington

Plaintiff also includes emails he sent to Mr. Covington while employed by Defendant containing photos of assignments he completed. *Id.* at 48–67.

**LEGAL STANDARD**

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.

9

*EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## DISCUSSION

Defendant argues that it is entitled to summary judgment on Plaintiff's failure to accommodate claim because: (1) Plaintiff is not a qualified individual under the ADA; (2) Defendant reasonably accommodated Plaintiff; and (3) Plaintiff's testimony forecloses his claim. (Doc. No. 143, at 14, 16–18.) Plaintiff contends that: (1) he was a qualified individual; (2) Defendant failed to provide a reasonable accommodation; and (3) Defendant failed to engage in the interactive process. (Doc. No. 156, at 15, 19.)

To prevail on a claim for failure to accommodate under the ADA, Plaintiff must show that:

(1) he is a "'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La, Dep't of Just., Off. of the Att'y. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

As an initial matter, the court has already determined that Plaintiff has raised a genuine issue of material fact with respect to his disability (Doc. No. 129, at 10); therefore, the court will not reconsider that issue in the present opinion and Defendant does not argue it for purposes of briefing. (Doc. No. 143, at 14.) Defendant also does not dispute that it had knowledge of Plaintiff's ADHD or that Plaintiff requested an accommodation. (Doc. No. 143-3, at 1.) Thus, the court will only consider whether (1) Plaintiff was a qualified individual under the ADA, and (2) Defendant provided a reasonable accommodation.

## I.      Qualified Individual Under the ADA

Under the ADA, a "qualified individual" is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The court shall consider "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* Plaintiff bears the burden to show that he is qualified under the ADA. *See Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017). To survive summary judgment on the qualified-individual issue, Plaintiff must show either: (1) that "he could perform the essential functions of his job in spite of his disability" or (2) "that a reasonable accommodation of his disability would have enabled him to

perform the essential functions of the job." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 324 (5th Cir. 2021).

Defendant contends that Plaintiff is not a qualified individual under the ADA. (Doc. No. 143, at 14.) Defendant presents evidence that after learning of Plaintiff's ADHD, it provided additional time, training, and supervision to accommodate Plaintiff, but his job performance never improved, in fact, Plaintiff digressed. (Doc. Nos. 143, at 14–15; 143-3, at 1.) Defendant includes performance notes evidencing Plaintiff's deficient performance, including repeatedly failing to follow basic instructions and failing to adequately perform his work, which it contends are essential functions of the job. (Doc. No. 143-3.) Defendant therefore maintains that Plaintiff was not able to perform the essential functions of the job with or without an accommodation. (Doc. No. 143, at 16.)

Regarding whether he was a qualified individual, Plaintiff suggests that he was a qualified individual because he was a trainee and poor performance did not prevent him from being qualified because he was still training to become a Signs and Markings Technician. (Doc. No. 156, at 15, 18.) As an initial matter, to the extent Plaintiff is arguing that he is a qualified individual under the ADA because he was recently hired and in training, that argument fails. Simply because an individual was hired for the position does not make him a qualified individual under the ADA. *See Thompson v. Microsoft Corp.*, 2 F.4th 460, 468 (5th Cir. 2021) (holding an individual was not qualified under the ADA when the only evidence presented was that he was a good fit for the job and initially received positive feedback about his performance).

Initially, in his deposition, Plaintiff testified that he performed the essential functions of his job without accommodation (Doc. No. 143-1, at 44–46, 50, 53–54),[2] but in his response to Defendant's motion for summary judgment, Plaintiff acknowledges that he had poor job performance before and after Defendant's accommodations. *See* Affidavit of Kevin Golden (Doc. No. 156-2, at 3) ("[S]ome of the training efforts from Senior employee Chris Walker were way too fast and complex per the delivery of his training methods[,] which involved me having to request for accommodations as to being 'patient' with me to catching up with instructions, multitasking efforts and delivery of the training methods specifically pertaining to his technique of training me, that exceeded my limitations."); *see also id.* at 2 (identifying that he received additional training from Mr. Covington regarding how to complete work orders but failed to properly submit orders after the additional training).  Moreover, although Plaintiff provides emails containing pictures of assignments he completed for Defendant (Doc. No. 156-3, at 48–67), Plaintiff admits he was successful in some aspects of the job, while he performed poorly in others, including following instructions. (Doc. No. 156, at 15, 19.) As such, Plaintiff does not dispute that his performance was deficient.

Plaintiff now focuses his arguments on his contention that he could have performed the essential functions of his job with reasonable accommodations, but that Defendant failed to provide reasonable accommodations. *Id.* at 25–26.[3]  Specifically, Plaintiff contends that he would have been able to perform the essential functions of his job if he was properly trained. *Id.* at 15–16, 19. Plaintiff, however, has failed to present evidence creating a genuine issue of material fact

---

[2] Defendant maintains that Plaintiff's testimony forecloses his failure to accommodate claim. (Doc. No. 143, at 17–18.) But Defendant's argument is inapposite because Plaintiff can prove he was a qualified individual under the ADA by showing he performed the essential functions of his job despite his disability. *See Weber*, 989 F.3d at 324. Plaintiff's testimony therefore is evidence of whether he was qualified.
[3] Whether Defendant provided reasonable accommodations will be discussed in Section II.

with respect to whether he could perform the essential functions of Signs and Markings Technician had Defendant provided "proper training." Plaintiff instead presents evidence that in his previous jobs as a chat sales employee for E-Tech Services and a general floor worker and union steward for Tyson Foods, he was able to perform the essential functions of the jobs with reasonable accommodations. (Doc. Nos. 156-2, at 5; 156-3, at 33–35.) Plaintiff's evidence regarding his ability to perform his previous jobs with accommodations, however, is insufficient to demonstrate that he could perform the essential functions of a Signs and Markings Technician with reasonable accommodations.

As a chat sales employee for E-Tech Services, Plaintiff was required to type 34–40 words per minute. (Doc. No. 156-3, at 33.) Plaintiff had difficulty meeting this requirement and was often distracted by other employees. *Id.* After informing his employer of his ADHD, E-Tech Services accommodated Plaintiff by providing "short cuts" to enable him to respond to customers in a timely manner. *Id.* It also adjusted Plaintiff's schedule to allow him to work the night shift in a cubicle away from other employees to minimize distractions. *Id.* As a general floor worker for Tyson Foods, Plaintiff was required to lift and stack heavy objects in a cold environment for hours on end. *Id.* He struggled to concentrate in this environment and would request to use the restroom, slowing down production. *Id.* at 33–34. After informing Tyson Foods of his ADHD, it allowed Plaintiff to take additional breaks and eat a snack to allow him to reenergize and remain focused. *Id.* at 34. As a union steward on behalf of Tyson Foods, Plaintiff was required to separate meat in a fast-paced environment, but he struggled to keep up with production. *Id.* at 35. After informing his supervisor of his ADHD, Plaintiff was allowed to rotate between jobs. *Id.*

Plaintiff maintains that these accommodations enabled him to perform the essential functions of his previous jobs. But Plaintiff's evidence is, at best, circumstantial evidence

regarding whether he could perform certain essential functions of a Signs and Markings Technician with reasonable accommodations. Here, Defendant identified the essential functions of Plaintiff's job, including maintaining necessary records of installation, location, maintenance, and repairs of traffic signs and devices, and closely following verbal and written instructions and procedures. (Doc. No. 143-3, at 3–4.) Recognizing that he was struggling to keep up with Mr. Walker's training, Plaintiff requested patience, effective communication, and assistance with multitasking as accommodations. (Doc. No. 156-2, at 3–4.) Plaintiff, however, fails to draw a connection that accommodations like those provided by his previous employers, even if requested, would have enabled him to perform the essential functions of a Signs and Markings Technician.

Moreover, Plaintiff does not elaborate on how any training or other accommodation would have enabled him to perform the essential functions of Signs and Markings Technician. Plaintiff's general assertions are not enough to create a genuine dispute of material fact that he was a qualified individual under the ADA. *See Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (citation omitted) ("Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."); *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008) ("The nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.").

Plaintiff has thus failed to produce competent evidence to demonstrate that he was a qualified individual under the ADA. He has not shown that he could perform the essential functions of his job despite his ADHD or that a reasonable accommodation of his ADHD would have enabled him to perform the essential functions of his job. *See Ikekwere v. Mnuchin*, No. 1:15-CV-418-

DAE, 2017 WL 4479614, *9–11 (W.D. Tex. May 15, 2017), *aff'd sub nom. Ikekwere v. Dep't of the Treasury*, 722 F. App'x 388 (5th Cir. 2018) (holding an individual was not qualified under the ADA where his job performance was poor with and without reasonable accommodation). Because Plaintiff has failed to raise a genuine dispute of material fact on an essential element of his failure to accommodate claim, Plaintiff's claim cannot survive summary judgment.

## II.      Reasonable Accommodations

Even if Plaintiff was a qualified individual under the ADA, he has failed to create a genuine issue of material fact as to whether Defendant provided reasonable accommodations for his ADHD. The ADA defines reasonable accommodations to include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). The accommodation provided need not be the best accommodation, so long as it meets the job-related needs of the employee being accommodated. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). "[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Id.*

Defendant argues that it provided reasonable accommodations for Plaintiff's ADHD. (Doc. No. 143, at 16.) Defendant presents evidence that it accommodated Plaintiff by providing additional time, training, and supervision. (Doc. No. 143-3.)  Plaintiff does not dispute that Defendant provided him with these accommodations (Doc. No. 156-2, at 2); instead, he argues that Defendant's accommodations were unreasonable, and Defendant should have provided the

accommodations he requested and that Mr. Covington initially agreed to provide (Doc. Nos. 156, at 25–26; 156-2, at 3–4). Plaintiff asserts that he asked Mr. Covington for patience, effective communication, and assistance with multitasking. (Doc. No. 156-2, at 3–4.)

Plaintiff contends that Defendant's alleged accommodations were not reasonable because they were not effective. (Doc. No. 156, at 25, 31.) Plaintiff specifically takes issue with Mr. Covington appointing Mr. Comer to train him because Mr. Comer was also a probationary employee and, like Plaintiff, Mr. Comer did not properly complete his work orders and struggled with pre-planning his assignments. (Doc. Nos. 143-3, at 7; 156, at 16, 22–23; 156-2, at 2.) Plaintiff therefore contends that Mr. Comer was not qualified to train him, and, to the extent that this was an accommodation, it was not reasonable. (Doc. No. 156, at 16, 22–23.)

The record reflects that Plaintiff was struggling to keep up with Mr. Walker's training. (Doc. No. 156-2, at 3.) After informing Mr. Covington about his disability, Mr. Walker was reassigned to a new position and Mr. Comer took over training Plaintiff. *Id.* at 4–5. Mr. Covington's performance notes identify that in addition to training by Mr. Comer, Plaintiff was given additional training by Mr. Covington and Mr. Walker pertaining to work orders and planning assignments to enable him to perform the essential functions of his job. (Doc. No. 143-3, at 5, 7–11.) The accommodations provided by Defendant were not unreasonable just because Plaintiff's job performance did not improve.

Plaintiff has not shown that Mr. Comer had a similar performance record to Plaintiff making him unqualified to train Plaintiff. To the extent that Mr. Comer's instruction was deficient in some areas, Plaintiff does not present any evidence or arguments why the additional time, training, and supervision by Mr. Walker and Mr. Covington did not adequately enable him to perform the essential functions of a Signs and Markings Technician. Thus, the court finds that the

17

accommodations provided by Defendant were reasonable. *See* 42 U.S.C. § 12111(9)(B) (identifying that modification of training may be considered a reasonable accommodation).

That Plaintiff requested patience, effective communication, and assistance with multitasking and did not specifically request additional time, training, and supervision does not change the court's analysis. "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Agro Distribution, LLC*, 555 F.3d at 471.  And to the extent that patience is an accommodation, *see Scott v. Am. Airlines, Inc.*, No. 3:95-CV-1393-R, 1997 WL 278129, at *1, *5 (N.D. Tex. May 15, 1997); *Miron v. Minn. Mining & Mfg. Co.*, No. Civ. 00-2175DSD/JMM, 2001 WL 1663870, at *5 (D. Minn. Dec. 19, 2001), the accommodations provided by Defendant likely encompassed Plaintiff's preferred accommodations. Plaintiff has therefore failed to raise a genuine issue of material fact that the accommodations provided by Defendant were unreasonable.[4]

Plaintiff further contends that Defendant failed to engage in a good-faith interactive process. (Doc. No. 156, at 20–21.) He contends that no written documentation of the interactive process exists. *Id.* at 24–26, 33. The ADA requires employers to engage in an informal interactive process with an employee who requests an accommodation because of his disability to determine what adjustments would allow him to perform the essential functions of his job. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999); 29 C.F.R. § 1630.2(o)(3). "The regulation's direction to the parties to engage in an interactive process is not an end [in] itself—it is a means to the end of forging reasonable accommodations." *Loulseged*, 178 F.3d at 736. Thus, "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to

---

[4] Plaintiff also contends that Defendant cannot prove undue hardship. (Doc. No. 156, at 27–31.) An employer violates the ADA if it fails to reasonably accommodate an employee, unless the employer can prove that the accommodation causes undue hardship. 42 U.S.C. § 12112(b)(5)(a). Because Defendant reasonably accommodated Plaintiff, and does not argue undue hardship, the court will not consider this argument.

reasonably accommodate an employee, the employer violates the ADA." *Id.* Because Defendant provided Plaintiff with reasonable accommodations for his ADHD, Plaintiff has not created a genuine issue of material fact on this claim.

Even so, there is no evidence that Defendant was unwilling to engage in a good-faith interactive process, as Plaintiff contends. Rather, the record indicates that Plaintiff informed Mr. Covington about his ADHD and requested patience, effective communication, and assistance with multitasking as accommodations. (Doc. No. 156-2, at 3–4.) Mr. Covington agreed to accommodate Plaintiff and provided him with additional time, training, and supervision. (Doc. No. 143-3, at 1.) That written documentation does not exist evidencing the interactive process does not defeat Plaintiff's own evidence that he engaged in a verbal discussion with Mr. Covington about his disability and Mr. Covington agreed to accommodate him. *See Silva v. City of Hidalgo, Tex.*, 575 F. App'x 419, 423 (5th Cir. 2014) (quoting *Loulseged*, 178 F.3d at 735) (identifying that the interactive process can be informal); 29 C.F.R. § 1630.2(o)(3). No reasonable juror could conclude that Defendant failed to provide reasonable accommodations or was unwilling to engage in a good-faith interactive process. As such, summary judgment is appropriate on Plaintiff's failure to accommodate claim.

## CONCLUSION

In sum, the undisputed evidence shows that Defendant provided Plaintiff with additional time, training, and supervision to accommodate his ADHD and that despite these accommodations, Plaintiff could not perform the essential functions of his job. Even liberally construing Plaintiff's arguments and evidence given his *pro se* status, he fails to articulate specific facts showing a genuine issue for trial. His failure to accommodate claim therefore cannot survive summary judgment. For the reasons stated above, Defendant's motion for summary judgment (Doc. No.

143) is **GRANTED** and Plaintiff's failure to accommodate claim is dismissed with prejudice.

**So ORDERED and SIGNED this 1st day of November, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE